**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 94-10555
(Summary Calendar)

SARAH DAILEY,

Plaintiff-Appellant,

versus

JOHNSON & JOHNSON
CONSUMER PRODUCTS, INC.,

Defendant-Appellee.

Appeal from the United States District Court
For the Northern District of Texas, Dallas Division
(3:93-CV-473-X)

September 26, 1996

Before HIGGINBOTHAM, WIENER, and BENAVIDES, Circuit Judges:

PER CURIAM:[*]

This is an appeal by Plaintiff-Appellant Sarah Dailey from the district court's order granting summary judgment to Defendant-Appellee Johnson & Johnson Consumer Products, Inc. (JJCPI) on her claim brought under the Age Discrimination in Employment Act

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

(ADEA).[1]  As Dailey failed to demonstrate the existence of a genuine issue of material fact concerning whether JJCPI's proffered nondiscriminatory reason for firing her was pretextual, we affirm.

I

FACTS AND PROCEEDINGS

One of JJCPI's predecessors hired Dailey in 1982 when she was 42 years old.  JJCPI was formed in 1989, and Dailey continued to work as one of the company's eight part-time retail sales representatives in the Dallas/Fort Worth area until, in 1992, JJCPI eliminated all but two of those positions and contracted with an independent broker to perform the same duties in a larger territory.  Dailey, age 52, was among the part-time representatives who JJCPI terminated; the two who were kept on were Louise Gallik, age 48, and Rita Blanton, age 38.

According to JJCPI, its Southern Region Manager, Jim Crotty, made the final decision about which two of the eight part-time representatives would be retained to fill the two remaining positions.  He relied in part on the recommendations of Linda Tiller, the Retail Supervisor, and Ron Lindeman, the District Manager.  Crotty was 42, Lindeman was 52, and Tiller was 40 when the staffing decision was made.  Crotty purportedly based his decision on five criteria:  (1) willingness to work 24-hours per

---

[1]  29 U.S.C. § 623(a)(1) (1988)(The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age.")

week; (2) past performance ratings; (3) previous experience and potential to handle the responsibility of servicing and selling to direct-buying accounts; (4) company service; and (5) geographic location to direct-buying accounts in the market.

With respect to geography, JJCPI stated that it needed to fill one position with a candidate who lived in the western part of the market and the other position with a candidate who lived in the eastern part. A third part, the central area of the market, would continue to be served by 58-year old Paul Boynton, a former Regional Accounts, District, and Retail Operations Manager who, after his retirement, worked part-time for JJCPI as a Sales Consultant on a contract basis. Boynton lives in North Dallas.

Three of the eight existing part-time representatives were automatically eliminated from consideration because they were unwilling to work 24 hours per week. From the five remaining candidates, Crotty chose Gallik, who lives in Fort Worth, to fill the western position and Blanton, who lives east of Dallas in Rowlett, to fill the eastern position. Like Boynton, Dailey lives in North Dallas.

Dailey, who worked 10 years for JJCPI and its predecessors before the staffing decision was made, had more tenure with the company than either Gallik or Blanton. Gallik had worked only one year for JJCPI, but she also had significant previous experience selling directly to customers on behalf of a consumer packaged goods manufacturer. Blanton had worked a total of approximately 5

3

years for JJCPI, including 2½ years between 1984 and 1986 for one of JJCPI's predecessors and another 2½ years as one of JJCPI's eight part-time representatives, beginning in 1990. In the three interim years, she worked as a merchandiser for a major food manufacturer.

A chart was available to Crotty that ranked the part-time representatives according to their most recent performance evaluations, which covered the period from July to December 1991. Dailey, Gallik, and Blanton had been evaluated by Elaine Bolling, Tiller's predecessor as Retail Supervisor. Blanton, with a score of 98, ranked first out of the five available candidates and first out of the 50 part-time representatives in the general southern region. Gallik, with a score of 96, ranked third out of the five available candidates and seventh in the region. Dailey, with a score of 95, ranked fourth out of the five available candidates and eleventh in the region.

Dailey does not complain about JJCPI's decision to retain Boynton's services or about its selection of Gallik to fill the western position. Instead, she contends that JJCPI should have selected her over Blanton for the final position. Dailey insists that her performance was better than Blanton's, that she had more relevant experience, that she had more tenure with the company, and that her geographical location was better suited to JJCPI's needs. Therefore, according to Dailey, she was the better candidate for

4

the job under 4 of the 5 criteria used by JJCPI.[2]

The district court's summary judgment opinion[3] concluded that Dailey created a fact question regarding the truth of JJCPI's proffered nondiscriminatory reasons for firing her, but that this circuit's holding in Bodenheimer v. PPG Industries, Inc.[4] precluded Dailey from reaching a jury on the basis of pretext alone. Dailey timely filed her appeal.

## II

## DISCUSSION

A.   Standard of Review

We review summary judgments de novo, applying the same standard as the district court.[5]  Summary judgment is appropriate only when no genuine issue as to any material fact exists.[6]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[2]   Both Dailey and Blanton satisfied the first criterion because they were willing to work 24 hours per week.

[3]   Dailey v. Johnson & Johnson Consumer Products, Inc., 850 F.Supp. 549 (N.D. Tex. 1994).

[4]   Bodenheimer v. PPG Industries, Inc., 5 F.3d 955 (5th Cir. 1993).  While the instant appeal was pending, we considered that issue en banc in Rhodes v. Guiberson Oil Tools, 75 F.3d 989 (5th Cir. 1996) (en banc).

[5]   Bodenheimer, 5 F.3d at 956; Waltman v. Int'l Paper Co., 875 F.2d 468, 474 (5th Cir. 1989).

[6]   Fed. R. Civ. P. 56(c).

5

party.[7]  In making our determination, we must draw all justifiable inferences in favor of the nonmoving party.[8]  As this is an employment discrimination case, we focus on whether a genuine issue of fact exists concerning the defendant's alleged intentional discrimination against the plaintiff.[9]

B.   Evidentiary Framework

We follow the Supreme Court's McDonnell Douglas-Burdine Title VII framework when we review employment discrimination cases brought under the ADEA.[10]  The plaintiff bears the initial burden of proving a prima facie case of discrimination by a preponderance of the evidence.[11]  To establish a prima facie case of age discrimination, the plaintiff "must demonstrate that: (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because

---

[7]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Bodenheimer, 5 F.3d at 956.

[8]   Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Bodenheimer, 5 F.3d at 956.

[9]   LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 447-448 (5th Cir. 1996); Armstrong v. City of Dallas, 997 F.2d 62, 65 (5th Cir. 1993).

[10]   Bodenheimer, 5 F.3d at 957.

[11]   McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

of his age."[12]  Once established, the plaintiff's prima facie case raises an inference of intentional discrimination.[13]  The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action.[14] If the defendant comes forward with admissible evidence of a reason which, if believed, would support a finding that the challenged action was nondiscriminatory, then the inference raised by the plaintiff's prima facie case drops from the case.[15]  The focus then shifts to the ultimate question whether the defendant intentionally discriminated against the plaintiff.[16]

C.    The Plaintiff's Burden

As the parties concede that Dailey established a prima facie case and that JJCPI rebutted the prima facie case with evidence of a legitimate nondiscriminatory reason, we may proceed directly to the ultimate question:  whether Dailey presents sufficient evidence to allow a jury to decide that JJCPI intentionally discriminated against her on the basis of her age.

---

[12]    Bodenheimer, 5 F.3d at 957.

[13]    McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; LaPierre, 86 F.3d at 448.

[14]    McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824; LaPierre, 86 F.3d at 448.

[15]    Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 255 & n.10, 101 S.Ct. 1089, 1094-95 & n.10, 67 L.Ed.2d 207 (1981).

[16]    St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993).

7

As direct evidence of an employer's discriminatory intent is rare, a plaintiff alleging employment discrimination may prove his claim through circumstantial evidence.[17]  Furthermore, a plaintiff may establish circumstantial evidence of intentional discrimination by demonstrating that the defendant's proffered nondiscriminatory reason is pretextual.[18]  The plaintiff will survive summary judgment if the circumstantial evidence supporting his claim is "such as to allow a rational factfinder to make a reasonable inference that age was a determinative reason for the employment decision."[19]  In Rhodes v. Guiberson Oil Tools,[20] we articulated a two-pronged standard for determining whether the plaintiff has satisfied this burden:

> [A] jury issue will be presented and a plaintiff can avoid summary judgment and judgment as a matter of law if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that age was a determinative factor in the actions of which plaintiff complains.  The employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow a jury to infer that the actual reason for the discharge was discriminatory.[21]

---

[17]  Rhodes, 75 F.3d at 993.

[18]  McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825; Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; LaPierre, 86 F.3d at 449.

[19]  Rhodes, 75 F.3d at 994.

[20]  75 F.3d 989 (5th Cir. 1996) (en banc).

[21]  Id. at 994.

In the instant case, Dailey's only argument in opposition to the district court's grant of summary judgment is the conclusionary statement that she has created a fact question regarding the veracity of JJCPI's proffered nondiscriminatory reason for firing her. She has supported her bald statement with no discrete facts. We agree that, in an appropriate case, a plaintiff might be able to survive a motion for summary judgment without other evidence by establishing a fact question as to whether the employer's proffered nondiscriminatory explanation is false.[22] Nevertheless, summary judgment is appropriate if the plaintiff cannot offer sufficient supporting evidence to create a fact question on the underlying issue of pretext.

D.   Pretext

Dailey alleges that JJCPI fired her not because Crotty believed Blanton was more qualified, but because Dailey was nearing retirement age. Dailey seeks to prove that, once the decision was made to fire her, JJCPI's managers conspired to give Dailey poor evaluations in order to make her look less qualified than Blanton. Dailey also seeks to establish pretext through her testimony that she was the only candidate with experience in servicing and selling

---

[22]   See Rhodes, 75 F.3d at 994 ("A jury may be able to infer discriminatory intent in an appropriate case from substantial evidence that the employer's proffered reasons are false. The evidence may, for example, strongly indicate that the employer has introduced fabricated justifications for an employee's discharge, and not otherwise suggest a credible nondiscriminatory explanation.").

to direct buying accounts, which the new position requires, and that she lived in a better geographic location than Blanton. We shall consider each of these contentions in turn.

1.  Geography

Dailey takes issue with JJCPI's contention that Blanton's home in the eastern part of the market was a better geographical location than Dailey's home in North Dallas. Dailey contends that her location actually places her in the center of Blanton's new territory and closer to most, if not all, of the stores that Blanton now services. Although this allegation is material and, if properly supported, would constitute some evidence of pretext, Dailey offers no supporting evidence other than her own conclusionary testimony. A jury may not determine that JJCPI's proffered explanation is false on the basis of Dailey's statement without some supporting evidence, such as information about the specific locations of the stores relative to Dailey and Blanton, traffic patterns, times and distances, and the like.[23] Dailey failed to satisfy her burden to produce such supporting evidence.

2.  Previous Experience and Potential

Crotty apparently relied on the recommendations of Lindeman and Tiller regarding each candidate's previous experience and

---

[23] See Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992), cert. denied 113 S.Ct. 82 (1992) ("Mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment.").

potential. According to JJCPI, Blanton was desirable because she was an expert on shelf-management and had experience in creating and updating "plan-o-grams"[24] at the corporate level. Dailey offers nothing to suggest that JJCPI's explanation is untrue; rather, she merely offers evidence that she has won awards in the past for performing similar duties. Dailey also claims that she was the only part-time representative with experience servicing and selling to direct buying accounts, but she admits that she performed such duties on only three occasions, once in each of the last three months of her employment.

Even though the evidence Dailey has offered tends to prove that she is well qualified, it does little if anything to prove that she is more qualified than Blanton. Moreover, the evidence does nothing at all to create a fact question regarding the veracity of JJCPI's assessment that Blanton was more qualified.

3. Past Performance

JJCPI's retail supervisors evaluate each part-time representative on forms that contain two components. The first component lists various "key objectives", tailored to each employee's particular job duties, along with raw data tracking the employee's progress toward each objective. The second component tabulates "points" given by the retail supervisor according to a subjective evaluation of the employee's performance on each key

---

[24] "Plan-o-grams" are schematics of the shelf arrangement of both JJCPI's products and those of its competitors.

objective.  The chart Crotty used to compare the candidates' past performances ranked the candidates in order of their total subjective "points" scored on the evaluation forms for the second half of 1991.

Dailey opines that she was graded unfairly because the raw data on her evaluation form reflected a higher level of performance than Blanton's but the point total she received was lower than Blanton's.  For example, the evaluation forms prepared by Tiller for the first half of 1992 show that Dailey accomplished 229 distributions to Blanton's 141, but that Dailey received only 20 points to Blanton's 21.  On the basis of that evidence, the district court concluded that Dailey raised a fact issue on pretext because it was "apparent that the numbers Plaintiff received in the Key Objectives are applied backward to her in comparison to the same application to Blanton."[25]

We disagree.  As Dailey herself points out, the duties of part-time representatives varied depending upon the types of stores in their territories.  Thus, a higher number of distributions or a greater account coverage rate does not evidence better performance without some common context in which to compare the difficulty of achieving those numbers.  The statistical data is meaningless when divorced from the subjective evaluation that accompanies it. Similarly, the fact that Dailey's score dropped relative to

---

[25]  Dailey, 850 F.Supp. at 554.

12

Blanton's after Tiller became Retail Supervisor in 1992 does not support an inference that Tiller intentionally graded Dailey down, much less that age animus was involved. Tiller supervised both Dailey and Blanton and was in the best position to compare their relative performance levels after taking differing circumstances into account. Moreover, Dailey fails to offer any evidence other than her own speculation that Tiller conspired with others or otherwise desired to evaluate Dailey unfairly. More importantly, JJCPI based its past-performance chart on Bolling's 1991 evaluations, not Tiller's 1992 evaluations. The evidence shows that Bolling consistently graded Blanton higher than Dailey, yet Dailey characterizes Bolling as a friend and does not accuse her of grading unfairly.

Dailey concedes that her evaluations were slightly lower than Blanton's for the last several evaluation periods. She counters this by opinion testimony of Bolling that it was unfair for JJCPI to compare performance evaluations because the differences between employees were small and not reflective of dissimilar job duties. Such evidence may call into question the wisdom of comparing employees in the manner that JJCPI chose, but Bolling's testimony is of no probative value on the issue of age discrimination pretext. Dailey cannot survive summary judgment on the strength of evidence that the criteria JJCPI used to reach its decision was imperfect. Rather, she must offer evidence that JJCPI's proffered explanation is false, and there is nothing in the summary judgment

13

record to that effect.

In sum, Dailey has failed to provide competent, probative evidence that JJCPI based its decision on some reason other than the criteria it announced, or that it did not rely on those criteria. Rather, Dailey seeks to prove that, under JJCPI's criteria, she simply was the better candidate for the job. The ADEA does not empower this court to second-guess an employer's legitimate management decisions.[26] The question is not whether JJCPI perfectly appraised the qualifications of each candidate, but whether its explanation is honest rather than pretextual. For that reason, a plaintiff cannot create a factual issue of pretext simply by arguing that the employer's decision was wrong.

We cannot allow a jury to infer that JJCPI's proffered reasons are pretextual absent evidence showing that Dailey was "clearly better qualified" than Blanton.[27] Dailey has failed to do so in this case.

                            CONCLUSION

The summary judgment evidence suggests that both Dailey and Blanton were highly qualified candidates, but that JJCPI decided that Blanton was the better qualified candidate between the two.

---

[26] See <u>Bodenheimer</u>, 5 F.3d at 959; <u>Bienkowski v. American Airlines, Inc.</u>, 851 F.2d 1503, 1507-08 (5th Cir. 1988)("The ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, now was it intended to transform the courts into personnel managers.").

[27] <u>Bodenheimer</u>, 5 F.3d at 959.

14

Dailey failed to offer probative evidence that (1) she was clearly better qualified than Blanton, or (2) JJCPI did not actually base its decision on the nondiscriminatory criteria that it testified were used.  Therefore, the summary judgment granted by the district court is

AFFIRMED.